UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CALVIN CLIVE MILLER, A039-746-22,

                                    Petitioner,

             -v-                                                    13-CV-508-JTC

TODD TRYON, AFOD for Buffalo Federal
Detention Facility;

MICHAEL PHILIPS, Buffalo Field Director
Office Director for Detention and Removal; and

ERIC H. HOLDER, JR., Attorney General
of the United States,

                                    Respondents.

_____

## INTRODUCTION

        Petitioner Calvin Clive Miller, an alien in the custody of the United States

Department of Homeland Security, Immigration and Customs Enforcement (collectively,

"DHS"), has filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2241 seeking release from detention at the Buffalo Federal Detention Facility in Batavia,

New York, pending the execution of a final immigration order of removal issued against

him.  Item 1.  As directed by this court's order entered May 15, 2013 (Item 3), respondent[1]

has submitted an answer and return (Item 5), along with an accompanying memorandum

_____

        [1]The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]."  28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

of law (Item 6), in opposition to the petition.  For the reasons that follow, the petition is

denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner, a native and citizen of Jamaica, was admitted to the United States at New

York City on June 28, 1995, as a lawful permanent resident.  *See* Item 5-1 (Declaration of

DHS Deportation Officer Juanita Payan), ¶ 5.  DHS records reflect that petitioner was

convicted of the following criminal offenses while present in the United States:

1.   On or about July 1, 1998, petitioner was convicted in Bronx County, New York, Criminal Court of Criminal Possession of Marijuana in the 5th Degree, and was granted a conditional discharge.

2.   On or about July 30, 1998, petitioner was convicted in Bronx County Criminal Court of Criminal Possession of Marijuana in the 4th Degree, and was granted a conditional discharge.

3.   On or about January 26, 1999, petitioner was convicted in Bronx County Criminal Court of Criminal Possession of a Controlled Substance in the 5th Degree: cocaine.  For this offense, he was sentenced to time served.

4.   On or about May 12, 1999, petitioner was convicted in Bronx County Criminal Court of Criminal Possession of a Controlled Substance in the 7th Degree: cocaine.  For this offense, he was sentenced to time served.

5.   On or about September 10, 1999, petitioner was convicted in New York State Supreme Court, New York County, of Criminal Sale of a Controlled Substance in the 3rd Degree.  For this offense, he was sentenced to a term of incarceration of 2 to 6 years.

6.   On or about June 11, 2000, petitioner was convicted in Bronx County Criminal Court of Criminal Sale of Marijuana in the 4th Degree, and was granted a conditional discharge.

7.   On or about September 18, 2000, petitioner was convicted in New York State Supreme Court, Bronx County, of Criminal Sale of a Controlled Substance in the 3rd Degree.  For this offense, he was sentenced to a term of incarceration of 2 to 6 years.

8.      On or about September 19, 2000, petitioner was convicted in New York State Supreme Court, Bronx County, of Criminal Sale of a Controlled Substance, near school grounds, to wit: crack cocaine.  For this offense, he was sentenced to a term of incarceration of 2 to 6 years.

9.      On or about May 3, 2001, Miller was convicted in Bronx County Criminal Court of Menacing in the 2nd Degree (weapon) and Criminal Possession of a Weapon in the 4th Degree (firearm/weapon).  For these offenses, he was sentenced to a term of incarceration of 1 year.

10.     On or about November 21, 2001, Miller was convicted of the following offenses in New York State Supreme Court, Bronx County:

a.      Criminal Possession of Stolen Property in the 5th Degree for which he was sentenced to a term of incarceration of 1 year;

b.      Reckless Endangerment in the 1st Degree for which he was sentenced to a term of incarceration of 7 years;

c.      Attempted Assault in the 1st Degree: intent to cause serious injury with a weapon, for which he was sentenced to a term of incarceration of 12 years; and

d.      Criminal Possession of a Weapon in the 2nd Degree: loaded firearm for which he was sentenced to a term of incarceration of 12 years.

Item 4-1, ¶ 6; *see also* Item 4-1 (Exh. A to Payan Decl.), pp. 6-7.

On June 13, 2001, while incarcerated at the Lakeview Correctional Facility, Brocton, New York, in the custody of the New York State Department of Correctional Services ("DOCS"; reorganized in 2011 and renamed the Department of Corrections and Community Supervision ("DOCCS")), petitioner was served with a Notice to Appear ("NTA"), which charged him with being removable from the United States pursuant to Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii) (8 U.S.C. § 1227(a)(2)(A)(iii)), as an alien that has been convicted of an aggravated felony as defined in INA § 101(a)(43)(b) (8 U.S.C. § 1101(a)(43)(b)), and pursuant to INA § 237(a)(2)(B)(i) (8 U.S.C.

§ 1227(a)(2)(B)(i)), as an alien that has been convicted of a controlled substance offense. Item 5-1, ¶ 7; Item 5-2, pp. 12-14.

On February 10, 2006, an immigration judge ("IJ") ordered petitioner removed from the United States to Jamaica.  Item 5-1, ¶ 8.  Petitioner reserved the right to appeal the IJ's decision, but no appeal was filed.  *Id.*

On October 4, 2012, petitioner was received into DHS custody upon his release from the custody of DOCCS, and was taken to the Buffalo Federal Detention Facility.  Item 5-1, ¶ 9; Item 5-2, pp. 7, 15.

On October 5, 2012, DHS sent a presentation packet to the Consulate General of Jamaica (the "Consulate") in New York City, requesting that a travel document be issued for petitioner's removal.  Item 5-1, ¶ 10; *see also* Item 5-2, p. 15.  On October 9, 2012, petitioner was interviewed by telephone by a representative of the Consulate.  Item 5-1, ¶ 11.

On October 23, 2012, DHS served petitioner with a formal Warning for Failure to Depart (Form I-229(a)), along with an instruction sheet listing actions that petitioner was required to complete within 30 days to assist in obtaining a travel document for his removal from the United States.  Item 5-1, ¶ 12.  The warning advised petitioner of penalties under INA § 243(a) for conniving or conspiring to prevent or hamper his departure from the United States, and also advised him that, pursuant to INA § 241(a)(1)(C), the statutory removal period may be extended if he failed to comply with the travel document application requirements.  *Id*.; *see also* Item 5-2, p. 10.

According to DHS records, DHS attempted to make contact or made contact with the Consulate on the following dates: October 23, 2013; November 5, 2012; November 15,

-4-

2012; December 10, 2012; December 26, 2012; December 27, 2012; January 22, 2013; January 28, 2013; February 27, 2013; March 19, 2013; March 28, 2013; April 15, 2013; April 23, 2013; May 13, 2013; and May 30, 2013.   Item 5-1, ¶ 13.   According to the information available to the court, the request for a travel document for petitioner remains pending with the Consulate at the present time.  *Id.* at ¶ 20.

In accordance with immigration regulations, DHS reviewed petitioner's custody in January 2013.  *Id.* at ¶ 17.  On January 7, 2013, petitioner was notified that, based upon the totality of the information available in his file–including his extensive criminal history demonstrating "wanton disregard for the laws of the United States" and "fail[ure] to appear on at least three occasions related to [his] criminal arrests," DHS determined that petitioner would be a threat to the safety and security of the community and a flight risk if released, and therefore his detention would be continued pending removal.  Item 5-2, pp. 6-9.

An additional review of petitioner's custody status was conducted by DHS Headquarters Post Order Custody Review Unit ("HQPOCRU") in April 2013.  Item 5-1, ¶ 18.  As part of that review, a panel was convened on April 2, 2013, at the Buffalo Federal Detention Facility to conduct an in-person interview of petitioner.  *Id.*  Following completion of the file review and interview, petitioner was notified on April 5, 2013, that DHS determined to continue his detention in DHS custody.  *Id.* at ¶ 19.

Petitioner filed this action on May 14, 2013, seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that his continued detention in post-final removal order custody is unlawful since it has exceeded the presumptively reasonable six-month period established under the due process standards set forth by the United States Supreme Court

in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

## **DISCUSSION**

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas*, 533 U.S. at 687 (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings and pending removal following the entry of a final order of removal are governed by two separate provisions of the INA–respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes detention of aliens after the issuance of a final removal order.  In this case, petitioner's detention at the time he filed his habeas petition was pursuant to INA § 241(a), which requires the Attorney General to accomplish an alien's removal from the United States within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

(i)  The date the order of removal becomes administratively final.

(ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory.  *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien.").  The statute also authorizes the Attorney General to continue detention of certain criminal aliens–*i.e.*, aliens ordered removed due to conviction of an enumerated crime–beyond the expiration of the ninety-day removal period.  *See* INA § 241(a)(6).[2]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process.  The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States.  *Zadvydas*, 533 U.S. at 699-700.  Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure

---

[2]INA § 241(a)(6) provides in full as follows:

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …." *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal. Under these regulations, a detainee who has been in post-final removal order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(d)(1). The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents." 8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or

> to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.  Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released.  8 C.F.R. § 241.13(g)(1).  However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination.  *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, in this case petitioner was ordered removed from the United States to Jamaica in an order dated February 10, 2006, which became final upon expiration of the 30-day period of time within which to appeal.  *See* 8 C.F.R. §§ 1003.39 (IJ's decision becomes final upon expiration of time to appeal if no appeal is taken), 1240.15 (appeal shall be filed within 30 calendar days after the mailing of a written decision).  Petitioner was received into DHS custody on October 4, 2012, upon his release from DOCCS custody.   Item 5-1, ¶ 9.  As an alien under a final order of removal,

petitioner's detention was mandatory for ninety days, pursuant to INA § 241(a).  Thereafter, upon determining that petitioner would pose a significant threat to the safety and security of the community and a flight risk if released, DHS was authorized to continue the detention beyond the expiration of the ninety-day period for "a period reasonably necessary to secure removal."  *Zadvydas*, 533 U.S. at 699-700.

Under *Zadvydas*, the first six months of post-final removal order detention are "presumptively reasonable."  *Zadvydas*, 533 U.S. at 701.  Once the six-month period has passed, the burden shifts to the alien detainee to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  *Id*.  Only if the alien makes this showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut" the alien's showing that there is no significant likelihood that he or she will be deported in the reasonably foreseeable future.  *Id.*; *see also Wang*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*.  The petition sets forth no factual basis to substantiate petitioner's belief that there is no significant likelihood he can be removed to Jamaica  in the reasonably foreseeable future.  He simply alleges that the Consulate "has not issued travel documents and there is no certainty as to when, if ever, such travel documents will be issued ...."  Item 1, ¶ 14.  However, as discussed above, the request for a travel document for petitioner remains pending with the Consulate,

and there is nothing in the record before the court to indicate that Jamaican authorities are inclined to deny the request.   Indeed, DHS records reflect that prompt steps were taken to secure the travel document immediately upon petitioner's receipt into DHS custody, and regular communications between the Consulate's representatives and DHS staff have continued throughout the detention period.   In addition, the available statistical evidence reveals that in recent years, DHS has successfully repatriated significant numbers of aliens to Jamaica, indicating no institutional barriers to petitioner's removal.   For example, DHS reports show that in fiscal year ("FY") 2009, a total of 1,664 aliens were repatriated to Jamaica; in FY 2010, 1,487 aliens were repatriated to Jamaica; and in FY 2011, 1,474 aliens were repatriated to Jamaica.   *See* DHS Yearbook of Immigration Statistics: 2011, Table 41: http://www.dhs.gov/yearbook-immigration-statistics-2011-3.

Furthermore, DHS records indicate that petitioner's own actions have resulted in additional delays in the processing of his travel documents.   For example, on October 28, 2012, petitioner filed an application for Certificate of Citizenship (Form N-600) with the United States Citizenship and Immigration Services ("USCIS") to process his claim of entitlement to U.S. citizenship status.   *See* Item 5-2, p. 7.   In January 2013, the Consulate advised DHS that it would not issue a travel document until petitioner's N-600 was completed, and his citizenship status was resolved.   Upon investigation, however, DHS was advised by USCIS that petitioner's N-600 application could not be located, whereupon the deportation officer conducting the investigation advised petitioner that he would need to either submit another application to USCIS, or contact the Consulate and advise them that he no longer has an application pending.   According to DHS records, petitioner did neither.   In addition, the Consulate has informed DHS that it will not issue travel documents

until it receives confirmation that all collateral challenges to petitioner's criminal convictions have been resolved.  *See* Item 5-1, ¶¶ 14-15.

Taken as a whole, these circumstances provide a reasonable basis for DHS's expectation that the verification required for the issuance of a travel document by the Jamaican government can be accomplished within the reasonably foreseeable future following resolution of petitioner's claim to citizenship, confirmation of the finality of any collateral challenges to his state criminal convictions, or any other impediments to removal, after which time the necessary travel arrangements may be made for petitioner's release from custody and his repatriation to Jamaica.

Significantly, petitioner has provided no evidence to contradict this expectation, or to otherwise establish compliance with the requirements of the DHS regulations outlined above.  Instead, petitioner relies solely on the fact that his detention has exceeded the presumptively reasonable six-month period established in *Zadvydas*.  *See* Item 1, ¶¶ 30-31.  However, several cases decided within this district have found the habeas petitioner's assertion as to the unforeseeability of removal, supported only by the mere passage of time, insufficient to meet the petitioner's initial burden to demonstrate that there is no significant likelihood of removal within the reasonably foreseeable future under the Supreme Court's holding in *Zadvydas*.  *See, e.g., Khaleque v. Department of Homeland Sec.*, 2009 WL 81318, at *4 (W.D.N.Y. Jan. 9, 2009) (petitioner failed to meet initial burden where the only evidence relied upon was the fact that the Consulate had not responded positively to the request for a travel document); *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d 301, 306-07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no evidentiary proof in admissible form to suggest that travel documents would

not be issued); *Haidara v. Mule*, 2008 WL 2483281, at \*3 (W.D.N.Y. June 17, 2008) (petitioner failed to meet initial burden where he "merely ma[de] the general assertion that he will not be returned to [his country] in the foreseeable future"); *Roberts v. Bureau of Immigration & Customs Enforcement*, 2007 WL 781925, at \*2 (W.D.N.Y. Mar. 13, 2007) (petitioner who did not present evidence that his country would not provide travel documents did not meet initial burden of proof); *Singh v. Holmes*, 2004 WL 2280366, at \*5 (W.D.N.Y. Oct. 8, 2004) (petitioner who "failed to submit anything demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future" did not meet initial burden of proof); *Juma v. Mukasey*, 2009 WL 2191247, at \*3 (S.D.N.Y. July 23, 2009) (vague, conclusory and general claims that removal is not foreseeable, and that Embassy will not issue travel document in foreseeable future, fails to meet initial burden).

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future …." *Zadvydas*, 533 U.S. at 701. Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## CONCLUSION

For the foregoing reasons, the petition is denied, and the case is dismissed. This dismissal is without prejudice to file another petition should it subsequently appear that the presumptively reasonable period of post-removal-order detention has elapsed, and that

removal is no longer reasonably foreseeable.  *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama*, 553 F. Supp. 2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied.  *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   October 9,  2013
p:\pending\2013\13-508.2241.oct3.2013